UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSIE DELACRUZ MILO,<br><br>                     Petitioner,<br><br>          v.<br><br>KEN CLARK, Warden,<br><br>                     Respondent. | Case No.   1:21-cv-01253-JLT-HBK (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No. 15) |

Petitioner Jessie Delacruz Milo ("Petitioner"), a state prisoner, initiated this action by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. No. 1, "Petition"). In response, Respondent filed a Motion to Dismiss. (Doc. No. 15). Petitioner filed an opposition to the Motion to Dismiss. (Doc. No. 18). For the reasons set forth more fully below, the undersigned recommends granting Respondent's Motion to Dismiss.

**I. BACKGROUND**

Petitioner is serving a 175 years to life prison sentence for his 2004 conviction for three counts of premeditated attempted murder, shooting at an unoccupied vehicle, shooting from a motor vehicle, and being a felon in possession of a firearm, that was entered by the Riverside

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

County Superior Court. (*See* Doc. No. 1 at 2; Doc. No. 4 at 8-9). On January 22, 2018, prison officials determined Petitioner did not meet the youth offender criteria pursuant to California Penal Code § 3051. (Doc. No. 4 at 19). The Petition currently pending before the Court raises one ground for relief: Petitioner's right to equal protection was violated because prison officials denied him a youth offender eligibility but found a similarly situated "second striker" prisoner was eligible for youth offender parole eligibility. (Doc. No. 1 at 9).

Respondent contends the Petition should be dismissed because it is time barred and federal habeas jurisdiction is lacking. (Doc. No. 15 at 2). In response, Petitioner argues that the Petition is timely because prison officials had possession of the Petition prior to expiration of the AEDPA limitations period; and this Court has jurisdiction because he is claiming deprivation of a "state created liberty interest" which is "cognizable on federal habeas." (Doc. No. 18).

## II. APPLICABLE LAW AND ANALYSIS

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition. R. Governing 2254 Cases 4. The Advisory Committee Notes to Rule 4 state that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent." A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to dismiss under Rule 4 of the Rules Governing Section 2254 Cases. *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990). Under Rule 4, a district court must dismiss a habeas petition if it "plainly appears" that the petitioner is not entitled to relief. *See Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).

**A. No Federal Habeas Corpus Jurisdiction**

"The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam) (quoting 28 U.S.C. § 2254(a)). If a prisoner's claim "would necessarily demonstrate the invalidity of confinement or its duration," a habeas petition is the appropriate avenue for the claim. *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). In contrast, if a favorable judgment for the

petitioner would not "necessarily lead to his immediate or earlier release from confinement," he may assert his claim only under 42 U.S.C. § 1983. *Nettles v. Grounds*, 830 F.3d 922, 935 (9th Cir. 2016). In *Nettles*, the Ninth Circuit, in analyzing Supreme Court precedent distinguishing relief available via § 1983 or habeas corpus, concluded if a state prisoner's claim does not lie at "the core of habeas corpus," meaning where success on a claim would not necessarily lead to an immediate or speedier release, then the claim "may not be brought in habeas corpus but must be brought, 'if at all,' under § 1983." *Id*. at 931 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); 93 S. Ct. 1827 (1973); *Skinner v. Switzer*, 562 U.S. 523, 535 (2011).

### 1. Claim not Cognizable Under *Nettles*

Here, Petitioner challenges prison officials' decision regarding the administration of § 3051 of the California Penal Code. Section 3051 established youth offender parole hearings to review the parole suitability of any prisoner who meets the age requirements at the time of the offense and who was sentenced to certain determinate or indeterminate terms. On January 22, 2018, prison officials determined that Petitioner did not "meet the youth offender criteria pursuant to PC 3051" because "controlling offense sentenced per PO 1170.12, PO 667(b)-(i)." (Doc. No. 4 at 19); *see* § 3051(h)("This section shall not apply to cases in which sentencing occurs pursuant to Section 1170.12, subdivisions (b) to (i), inclusive of Section 667, or 667.61").

Petitioner argues his right to equal protection "as guaranteed by the Fourteenth Amendment" of the Constitution was violated when prison officials denied him youth offender parole eligibility, despite finding another "similarly situated" prisoner was eligible for a youth offender parole eligibility. (Doc. No. 1 at 9). However, even assuming success on Petitioner's claims would render him eligible for youth offender parole consideration, it would not necessarily lead to a grant of parole because under California law the parole board must consider all relevant reliable information in determining suitability for parole, and "has the authority to deny parole on the basis of any grounds presently available to it." *Nettles*, 830 F.3d at 935 (citing *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003)). Because success on Petitioner's claim would not necessarily lead to his immediate or earlier release from confinement, the claim does not fall within "the core of habeas corpus," and is not cognizable in federal habeas corpus. *See id*.; *see*

*also Vega v. Cal. Board of Parole Hearings*, 2021 WL 3487530 (E.D. Cal. July 1, 2021) (no federal habeas jurisdiction with respect to claim challenging the denial of youth offender parole suitability hearing); *Johnson v. Lozano*, 2020 WL 959253 (C.D. Cal. Jan. 17, 2020), *adopted*, 2020 WL 949953 (C.D. Cal. Feb. 26, 2020) (no federal habeas jurisdiction where petitioner claimed administration of California Penal Code § 3105 violated the Equal Protection clause of the California Constitution because "[e]ven if he were afforded a parole hearing, Petitioner still would not be entitled to immediate release or a shorter prison stay."); *Soun v. Arnold*, 2017 WL 6039665 (N.D. Cal. Dec. 6, 2017) (federal habeas court lacks jurisdiction over claim that § 3051 violates the Fourteenth and the Eighth Amendments).  Accordingly, the undersigned recommends the Petition be dismissed for lack of federal jurisdiction.

### 2. Conversion to § 1983 Civil Rights Action

Although a court may convert a habeas petition to a civil rights complaint, the undersigned does not find recharacterization proper in this case.  "If the complaint is amenable to conversion on its face, meaning that it names the correct defendants and seeks the correct relief, the court may recharacterize the petition . . . ." *See Nettles v. Grounds*, 830 F.3d 922, 936 (9th Cir. 2016) (quoting *Glaus v. Anderson*, 408 F.3d 382, 388 (7th Cir. 2005)).  Here, the Petition names only the warden as the sole respondent.  Petitioner does not name the people who allegedly committed the affirmative acts or omissions that allegedly violated his rights.  Further, in granting Petitioner *in forma pauperis* status, the Court waived the $5.00 filing fee for a habeas corpus action, not the $350 filing fee that is payable over time and appliable to prisoners prosecuting a civil rights action.  Due to these differences and the disadvantages that recharacterization may have on Petitioner's claims, the undersigned finds that it would be inappropriate to construe the habeas petition as a civil rights complaint under 42 U.S.C. § 1983.  This conclusion, however, does not preclude Petitioner from pursuing his claims in a properly filed civil action pursuant to § 1983.

////

////

////

**B. Petition Not Timely Filed Under AEDPA's Statute of Limitations**

In the alternative, the undersigned finds the Petition should be dismissed as untimely. Title 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, sets a one-year period of limitations to the filing of a habeas petition by a person in state custody. This limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). When challenging state administrative actions, the Ninth Circuit has held that "AEDPA's one year statute of limitations runs from when the 'factual predicate' of the habeas claims 'could have been discovered through the exercise of due diligence.' As a general rule, the state agency's denial of administrative appeal is the 'factual predicate' for such habeas claims." *Mardesich v. Cate*, 668 F.3d 1164, 1172 (9th Cir. 2012); *see* 28 U.S.C. § 2244(d)(1)(D).

Petitioner was denied youth offender eligibility pursuant to § 3051 on January 22, 2018. (*See* Doc. No. 4 at 19). Petitioner did not seek administrative review. (*See generally* Doc. No. 1; Doc. No. 15 at 4). Thus, AEDPA's one-year statute of limitations began running the next day, January 23, 2018. Petitioner had until January 23, 2019 to file his habeas petition, absent statutory or equitable tolling. *See Patterson v. Stewart*, 251 F.3d 1243, 1246-47 (9th Cir. 2001) (adopting anniversary method to calculate one-year statutory period). As discussed in more detail below, applying the mailbox rule, Petitioner filed his federal petition on July 26, 2021. (Doc. No. 1).

//////

**1. Statutory Tolling**

The federal statute of limitations tolls for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). An application for post-conviction or other collateral review is "pending" in state court "as long as the ordinary state collateral review process is 'in continuance'—*i.e.*, 'until the completion of' that process.'" *Carey v. Saffold*, 536 U.S. 214, 219 (2002) (citations omitted). "California's collateral review system differs from that of other States in that it does not require, technically speaking, appellate review of a lower court determination." *Id*. at 221. Instead, petitioners are required to file an original habeas petition and a subsequent appeal in each level of court (superior, appellate, and supreme) within a "reasonable" period. *Id.* at 221-22; *Robinson v. Lewis,* 9 Cal. 5th 883, 897 (2020) ("There are no specific time limits for either filing the first [habeas] petition or filing subsequent petitions in a higher court. Instead, California courts employ a *reasonable*ness standard. The claim must generally be presented without substantial delay."). A petition is considered no longer "pending," and the petitioner is barred from AEDPA statutory tolling, if an unreasonable amount of time elapsed between the filing of state court habeas petitions. *Saffold*, 536 U.S. at 221.

To determine whether a habeas claim was filed within a reasonable amount of time, California courts consider three factors. *Robinson,* 9 Cal. 5th at 897. First, "a claim must be presented without *substantial delay.*" *Id*. (emphasis in original). "'Substantial delay is measured from the time the petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim.'" *Id*. (quoting *In re Robbins*, 18 Cal. 4th 770, 780 (1998)). Second, if a petition was filed with substantial delay, a petition may yet be considered on the merits if the "petitioner can demonstrate *good cause* for the delay." *Id*. (emphasis in original). Third, a petition filed without good cause for substantial delay will be considered if it falls under one of four narrow exceptions. *Id*. Only three of the four exceptions are relevant to noncapital cases: (1) the "'error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner;'" (2) "'the petitioner is actually innocent of the crime or crimes of which

6

he or she was convicted;'" and (3) "'the petitioner was convicted or sentenced under an invalid statute.'" *In re Reno*, 55 Cal. 4th 428, 460 (2012) (quoting *Robbins*, 18 Cal. 4th at 780). The California Supreme Court has opined that a six-month gap delay would normally be "unduly generous," but adopted "a time period of 120 days as the safe harbor for gap delay" for the filing of habeas petitions between state court levels. *Robinson*, 9 Cal. 5th at 901. "A new petition filed in a higher court within 120 days of the lower court's denial will never be considered untimely due to gap delay." *Id*.

For petitions filed in a "reasonable time," a petitioner may count as "pending" the "days between (1) the time the lower state court reached an adverse decision, and (2) the day he filed a petition in the higher state court." *Evans v. Chaviz*, 546 U.S. 189, 193 (2006). This Court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." *Id.* at 198.

Here, AEDPA's statute of limitations began running on January 23, 2018, when prison officials denied Petitioner's youth offender eligibility pursuant to § 3051, and continued to run until Petitioner filed his first state habeas petition on January 13, 2019. (*See* Doc. No. 16-1 at 6). "AEDPA's statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval." *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999). Accordingly, 355 days elapsed on the AEDPA clock between the administrative decision and the filing of Petitioner's first state habeas petition. As noted by Respondent, the limitations period was then tolled from January 13, 2019, the date Petitioner filed his first state habeas petition, through July 14, 2021, the date the California Supreme Court denied Petitioner's habeas petition. *Id.* at 1006-07 (The limitations period "remains tolled during the intervals between the state court's disposition of a state habeas petition and the filing of the petition at the next state appellate level."); *Delhomme v. Ramirez*, 340 F.3d 817, 821 n.3 (9th Cir. 2003) ("[T]he crucial issue for tolling purposes is whether the petitioner has timely proceeded to the next appellate level, since the one year filing period is tolled to allow the opportunity to complete one full round

of review."). Thus, the AEDPA clock commenced running again on July 15, 2021 and continued to run for 10 days until it expired on July 25, 2021.

Petitioner's federal habeas Petition was docketed in the United States District Court, Central District of California, on August 9, 2021, and transferred to the Eastern District of California on August 18, 2021. (Doc. Nos. 1, 6). Respondent argues that pursuant the mailbox rule, the date of filing is the date noted on the proof of service, which was August 2, 2021; thus, the Petition is untimely because it was filed after the AEDPA limitations period expired on July 25, 2021. (Doc. No. 15 at 5). Respondent correctly notes Petitioner, as a prisoner, is afforded the benefit of the "prison mailbox rule," which considers a petition filed on the date the prisoner delivers it to prison authorities for forwarding to the clerk of court. *See Houston v. Lack*, 487 U.S. 266 (1988); *Saffold v. Newland,* 250 F.3d 1262, 1265, 1268 (9th Cir. 2000), *overruled on other grounds, Carey v. Saffold,* 536 U.S. 214 (2002). However, contrary to Respondent's position that the date on the proof of service is deemed the constructive date, the Ninth Circuit deems the date a petition is signed, absent evidence to the contrary, to be the date for purposes of the mailbox rule. *See Jenkins v. Johnson*, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), *overruled on other grounds*, *Pace v. DiGualielmo*, 544 U.S. 408 (2005); *Lewis v. Mitchell*, 173 F. Supp. 2d 1057, 1059 n.1 (C.D. Cal. 2001) (delivery for purposes of constructing filing under the prison mailbox rule is presumed to be on the date of signing the petition, absent evidence to the contrary). Accordingly, because there is no evidence to the contrary, the Court considers the date Petitioner signed the Petition—July 26, 2021—to be the operative date of filing under the mailbox rule for calculating the running of the AEDPA statute of limitations. (Doc. No. 1 at 8, 10). Even affording Petitioner this earlier date, his federal Petition is untimely because it was filed one day after the AEDPA limitations period expired on July 25, 2021. Thus, in the alternative, the Petition must be dismissed as time barred unless Petitioner can demonstrate that he is entitled to equitable tolling.

**2. Equitable Tolling**

AEDPA's statutory limitations period may be equitably tolled. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling is available if a petitioner shows: "(1) that he has been

pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. at 649. To show "extraordinary circumstances," a petitioner must show that "the circumstances that caused his delay are both extraordinary and beyond his control"—a high threshold. *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016). "The requirement that extraordinary circumstances 'stood in [a petitioner's] way' suggests that an *external* force must cause the untimeliness. *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (emphasis added). Furthermore, a petitioner must show that the extraordinary circumstances *caused* the untimely filing of his habeas petition. *See Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (citing *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (explaining that equitable tolling is available only when the extraordinary circumstances were the cause of the petitioner's untimeliness); *Smith v. Davis*, 953 F.3d 582, 595 (9th Cir. 2020) ("Whether an impediment caused by extraordinary circumstances prevented timely filing is a 'causation question.'").

To demonstrate that he has been pursuing his rights diligently, a petitioner must show that he has "been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith*, 953 F.3d at 598-99. In other words, "when [a petitioner] is free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights." *Id*. at 599. The diligence required for equitable tolling does not have to be maximum feasible diligence, but rather reasonable diligence. *Holland*, 560 U.S. at 653. And the court is not to impose a rigid impossibility standard on petitioners, especially *pro se* prisoner litigants "who have already faced an unusual obstacle beyond their control during the AEDPA litigation period." *Fue v. Biter*, 842 F.3d 650, 657 (9th Cir. 2016) (quoting *Sossa v. Diaz*, 729 F.3d 1225, 1236 (9th Cir. 2013)). However, "in every instance reasonable diligence seemingly requires the petitioner to work on his petition with some regularity—as permitted by his circumstances—until he files it in the district court." *Davis*, 953 F.3d at 601. Because Petitioner must show diligence before, during, and after extraordinary circumstances prevented him from filing, the relevant time period of the court's analysis is January 23, 2018, the day the statute of limitations began to run,

9

to July 26, 2021, the day petitioner signed and constructively filed his federal petition. *See Davis*, 953 F.3d at 598-99. Admittedly, "the threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1062, 1066 (9th Cir. 2002) (citations omitted).

Here, Petitioner argues that he "notified the prison law library that he needed to be called in to get a proof of service and make copies of the petition on [July 22, 2021]. And due to Covid 19 restrictions on the amount of people in the law library, the librarian [] was not able to call Petitioner in until [August 3, 2021]; which is the date on the proof of service and law library log. The librarian had possession of the habeas for mailing by [July 23, 2021]; which is 2 days before the AEDPA day deadline." (Doc. No. 18 at 3). To the extent Petitioner is arguing that equitable tolling applies, unpredictable lockdowns or library closures do not constitute extraordinary circumstances warranting equitable tolling. *See United States v. Van Poyck*, 980 F.Supp. 1108, 1111 (C.D. Cal. 1997) (inability to secure copies of transcripts from court reporters and lockdowns at prison lasting several days and allegedly eliminating access to law library were not extraordinary circumstances and did not equitably toll one-year statute of limitations). "Petitioner's . . . difficulties and disruptions he encounters with sporadic prison lockdowns are conditions of prison life that are no different than those experienced by the vast majority of incarcerated prisoners attempting to file petitions for writ of habeas corpus. By definition, therefore, such circumstances in themselves are not extraordinary and do not justify equitable tolling." *See id.*; *Galaz v. Harrison*, No. 1:04-cv-05383-TAG HC, 2006 U.S. Dist. LEXIS 17833, at *16 (E.D. Cal. Mar. 27, 2006). Petitioner does not demonstrate how his alleged inability to access the law library prevented him from timely filing his Petition; nor does he make a showing of diligence, as required for the granting of equitable tolling. *See Smith*, 953 F.3d at 599.

Moreover, the Court notes the dates referenced by Petitioner do not correspond with the documents submitted by Petitioner in support of his Petition. For instance, the proof of service was dated August 2, 2021 as opposed to August 3, 2021, and Petitioner did not submit evidence of a date noted in the "law library log." (*See* Doc. No. 1 at 17). And regardless of Petitioner's contention that the prison librarian "had possession" of his Petition for mailing on July 23, 2021,

as discussed extensively above, the date the petition is signed may be considered the earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule. *See Jenkins*, 330 F.3d at 1149 n.2. Here, that date was July 26, 2021, one day after the AEDPA limitations period expired.

To the extent Petitioner argues equitable tolling applies, the undersigned finds Petitioner fails to carry his burden of demonstrating that the reasons he cites constitute extraordinary circumstances. Thus, in the alternative, the undersigned recommends that Petitioner be denied equitable tolling and his petition be dismissed with prejudice as untimely.

### III. CERTIFICATE OF APPEALABILITY

State prisoners in a habeas corpus action under § 2254 do not have an automatic right to appeal a final order. *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). To appeal, a prisoner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2); *see also* R. Governing Section 2254 Cases 11 (requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner); Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). Where, as here, the court denies habeas relief on procedural grounds without reaching the merits of the underlying constitutional claims, the court should issue a certificate of appealability only "if jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id*. Here, reasonable jurists would not find the undersigned's conclusion debatable or conclude that petitioner should proceed further. The undersigned therefore recommends that a certificate of appealability not issue.

Accordingly, it is **RECOMMENDED**:

1. Respondent's Motion to Dismiss (Doc. No. 15) be **GRANTED**.

2. The Petition (Doc No. 1) be dismissed for lack of federal habeas jurisdiction; or; in the alternative as untimely.

3. Petitioner be denied a certificate of appealability.

**NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   May 23, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE